HENDERSON, Senior Circuit Judge,
specially concurring:
I concur in the majority opinion authored by Judge Barkett and write separately to *1434 emphasize my concerns about the sufficiency of the evidence against Traci Mathis. This necessitates a brief summary of the evidence against that particular defendant.
At the time ,of these events, Mathis was a nurse’s aide and the mother of a young daughter. While she leased an apartment on Ouidy Lane in Pensacola, she and her daughter spent most of their time at Mathis’ mother’s house on Aaron Drive in the same city. Mathis’ brother had introduced her to Rod Savage, the central figure of this conspiracy, in 1987. Until her brother married, Savage was in the habit of dropping by the Mathis household on Aaron Drive. Mathis and Savage apparently dated briefly in 1994 but were never romantically involved at any time.
In October 1995, Savage went by the Aaron Drive house to seek Mathis’ permission to stay in her Guidy Lane apartment for a few days because he had had a fight with his girlfriend. Mathis agreed and gave him a key to the apartment. On November 3,1995, Mathis encountered Savage and asked for the return of her key. Savage told her that he had lost it. Mathis had the locks changed the next day.
The bulk of the government’s case against Mathis consisted of five intercepted conversations between Savage and her, all initiated by Savage, between November 22 and December 9, 1995. In the first call, Savage protested that she had changed the lock and told her he needed to get something out of the apartment. Mathis apparently reacted angrily to this news but said that, after he paid a $50.00 electricity bill, he could get his “bowls.” In a second call about 20 minutes later, Savage again asked for a key to the apartment but Mathis declined. On November 24, 1995, Savage called Mathis at the apartment and she told him that he could come get his bowls.
Mathis testified that she went to her apartment on December 6, 1995 with a friend, where they encountered Savage. (It is not clear from the evidence how Savage gained access to the apartment.) She observed Savage go to the refrigerator/freezer and count some of its contents before he left the apartment. The fourth call came the following day. Savage called Mathis to complain that he was missing one of his “things.” She responded that he would not get it back until he paid her $500.00. Mathis and several other witnesses testified that the money was for a VCR Savage had agreed to buy Mathis’ daughter for Christmas. During the final call on December 9, 1995, she and Savage disagreed about the number of “bags” in the refrigerator. Marcus McCall and Leroy Coleman recalled that they went with Savage to Mathis’ apartment on several occasions to prepare or obtain cocaine. They both testified, however, that Mathis was never there on any of those occasions and that they had brought all' the bowls and other paraphernalia needed to prepare the drug.
Mathis was charged and convicted for conspiracy to possess with intent to distribute crack cocaine. She was not charged with possession of cocaine, although apparently that was the substance in the bowl belonging to Savage that she took at one point. The government contends that Mathis’ act of demanding payment for the bowl she removed from the refrigerator is evidence of a prior agreement that Savage would pay her for the use of her apartment to cook the crack cocaine. While the majority opinion notes that the government’s evidence might establish criminal blackmail or unlawful possession of drugs, it does not establish beyond a reasonable doubt that Mathis joined the unlawful conspiracy charged in the indictment.
In my view, this is a very close case. To support a conviction for conspiracy, the government must establish beyond a reasonable doubt that a conspiracy existed, that the defendant knew of the essential objectives of the conspiracy and that the defendant knowingly and voluntarily participated in the conspiracy. See United States v. Calderon, 127 F.3d 1314, 1326 (11th Cir.1997). Mathis’ conduct over the period of several weeks from late October to early December 1995 may be said to have shown that she knew of the conspiracy but is not evidence that she agreed to aid its objectives. Changing the *1435 locks immediately after Savage told her he had lost the key and then refusing to give him a new key certainly can not be viewed as furthering the objectives of the conspiracy. Moreover, even her demand for payment of the $500.00 before returning the bowl was not in furtherance of the conspiracy’s objectives. To the contrary, it seems to constitute only interference with the business of the conspiracy. At some point after she changed the locks, Mathis may have become aware of what Savage had been doing in her apartment. That is not proof that her conduct was in pursuit of the objectives of the conspiracy.
To sustain the conviction, we must examine the evidence de novo in the light most favorable to the government to determine whether a reasonable jury could have concluded beyond a reasonable doubt that Mathis was guilty of conspiring to possess with intent to distribute cocaine. U.S. v. Lopez-Ramirez, 68 F.3d 438 (11th Cir.1995). I do not believe the government’s evidence against Mathis was sufficient to meet that burden.